

**IT IS ORDERED as set forth below:**

**Date: July 13, 2021**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: <br><br> Moses Samuel William, Sr. and Victoria Zor William, <br><br> Debtors. | CASE NO. 15-55766-BEM <br><br><br> CHAPTER 7 |
| Neil C. Gordon, Chapter 7 Trustee, for the Estates of Moses Samuel William and Victoria Zor William, <br><br> Plaintiff, <br><br> v. <br><br> U.S. Bank, National Association, Victoria Zor William, and Maybelline Sinue, <br><br> Defendants. | ADVERSARY PROCEEDING NO. 19-5265-BEM |

**ORDER DENYING DEFENDANTS MAYBELLINE SINUE AND**
**VICTORIA Z. WILLIAM'S MOTION TO DISMISS**

**I.      BACKGROUND**

On March 31, 2015, Debtors Moses Samuel William, Sr. and Victoria Zor William ("Debtors") filed chapter 7 bankruptcy case number 15-55766 (the "Main Case"). Debtors received a discharge on December 22, 2015. Plaintiff Neil Gordon ("Plaintiff" or "Trustee") initiated the above-captioned adversary proceeding on July 31, 2019, by filing the Complaint (the "Complaint") [Doc. 1] against Defendants U.S. Bank, National Association ("U.S. Bank"), Maybelline Sinue ("Ms. Sinue") and Victoria Zor William ("Ms. William" and with Ms. Sinue, "Defendants" and collectively with Plaintiff, the "Parties").

Count I of the Complaint asserts a claim against U.S. Bank for turnover pursuant to 11 U.S.C. § 542 and was dismissed on motion of U.S. Bank. [Docs. 33, 37]. Count II of the Complaint is pled in the alternative and asserts a claim against Defendants for authority to sell the Bankruptcy Estate's and the co-owner's interest in certain real property located at 5501 The Vyne Avenue, Atlanta Georgia 30349 (the "Property") under § 363(h), and Count III, which is also pled in the alternative, asserts a claim against Defendants for turnover of the Property under § 542.

The deadline for Defendants' responses to the Complaint was extended by consent to March 31, 2021. [Doc. 56]. On March 30, 2021, Defendants filed a *Motion To Dismiss For Failure To State A Claim Pursuant To Rule 12(b)(6)* (the "Motion" or "Motion to Dismiss") [Doc. 58] and supporting brief (the "Brief"), in which they seek dismissal of Counts II and III. [Doc. 59]. Plaintiff filed his *Brief in Response to Motion to Dismiss filed by Defendants Maybelline Sinue and Victoria Zor William* on April 13, 2021 (the "Response Brief"). [Doc. 62]. For the reasons set forth below, the Motion to Dismiss will be DENIED.

2

**II.        LEGAL STANDARD**

    **1. Motion to Dismiss**

Defendants seek dismissal for failure to state a claim upon which relief may be granted and under principals of res judicata. Fed. R. Civ. P. 8(a)(2), made applicable in adversary proceedings by Fed. R. Bankr. P. 7008, sets forth a liberal pleading standard that requires the complaint contain only a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Fed. R. Bank. P. 7012, the Court "must take the factual allegations of the complaint as true and make all reasonable inferences from those facts to determine whether the complaint states a claim that is plausible on its face." *Cline v. Tolliver*, 434 F. App'x 823, 825 (11th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations omitted).

    **2. Res Judicata**

"Res judicata, or claim preclusion, bars relitigation of matters that were litigated or could have been litigated in an earlier suit." *Manning v. City of Auburn,* 953 F.2d 1355, 1358 (11th Cir. 1992) (citing *Nevada v. U.S.*, 463 U.S. 110, 130, 103 S. Ct. 2906, 2918 (1983)). In the Eleventh Circuit,

> a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.

*Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir. 1999). The principal test in the Eleventh Circuit for "determining whether the causes of action are the same is whether the primary

3

right and duty are the same in each case." *Id.* at 1239. A cause of action is the same if it involves "the same nucleus of operative fact, or is based upon the same factual predicate, as a former action[.]" *Id.*. "It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Id.* (quotation marks and citation omitted). To determine if the same nucleus of fact is present in each action the court must compare the substance of the actions and look to the factual issues explored in the first case and compare them with the issues to be resolved in the second case. *Id; see also Manning,* 953 F.2d at 1359 (stating that the argument that the right not to be discriminated against and the duty not to discriminate being the same in each suit was too simplistic and the court must look at the facts of each suit in determining if the same claim is raised).

"Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Ragsdale,* 193 F.3d at 1239 n.8 (quoting Restatement of (Second) of Judgments § 24(2) cmt. b (1980)). In *Ragsdale*, the court found that res judicata applied and noted that the event giving rise to the second suit occurred more than 10 months prior to the filing of the initial suit. *Id.* at 1239; *see also Cheshire Bridge Holdings, LLC v. City of Atlanta,* 777 F. App'x 310, 319 (11th Cir. 2019). Thus, the cases often turn on the timing of events material to the claim raised. *See Cheshire Bridge Holdings,* 777 F. App'x at 319 ("The timing and origin are so different that this new case would not have been conveniently tried with either previous case."); *see also Manning,* 953 F.2d at 1360 (finding that res judicata did not apply and stating that "[t]he scope of litigation is framed by the complaint at the time it is filed. The rule that a judgment is conclusive as to every matter that might have been

4

litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.") (internal quotation marks and citation omitted); *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1357-58 (11th Cir. 1998) (res judicata did not bar claims that arose after the first action was filed and references in a brief did not amount to actual assertion of the later claims); *Trustmark Ins. Co.. v. ESLU, Inc.,* 299 F.3d 1265, 1270 (11th Cir. 2002) (res judicata barred 42 additional claims against defendant because "[a] series of breaches of the same contract, all occurring before filing suit, should be brought in that suit.").

### III.     FACTS ALLEGED

Because the Court must accept all well-pleaded facts as true in considering the Motion, the relevant facts from the Complaint are reproduced below, omitting legal conclusions and general statements of the law. Additionally, where noted, the Court has taken judicial notice of its own records in the Main Case and other adversary proceedings ("A.P.s") related to the Main Case as necessary to understand the entire factual background the Court considers in ruling on the Motion. *HRN Group, LLC v. Wilmington Savings Fund Society, FSB (In re HRN Group, LLC)*, No. 18-63282, AP No. 19-5312, 2020 WL 426048, at *2 (Bankr. N.D. Ga. Jan. 27, 2020) (Hagenau, J.) (citations omitted).

On April 14, 2009, Ms. William alone purchased the Property for $185,000, pursuant to the special warranty deed recorded on the Property with the Clerk of Superior Court of Fulton County, Georgia on June 30, 2009. [Doc. 1 ¶ 13]. On June 19, 2009[1], Ms. William executed certain loan closing documents in favor of Community Mortgage Services, Inc. [*Id.* at ¶

---

[1] The Complaint, at paragraph 14, states that the loan was taken out on June 19, 2014; however, Exhibit B to the complaint in A.P. 17-05243, Gordon v. U.S. Bank [A.P. 17-5243, Doc. 1 at 15] shows that the loan was taken out on June 19, 2009, two months after the special warranty deed was executed. *FTC v. Abbvie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (noting that specific facts in exhibits override general and conclusory allegations in a complaint) (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)).

5

14]. Ms. William signed a Note, referencing Loan No. 68002524211 (the "Note"), and Security Deed (the "Initial Security Deed") in the original principal amount of $162,800. [*Id.* at ¶ 15].

Ms. William executed a Quitclaim Deed ("QC Deed"), dated May 5, 2014, and recorded in the real estate records (the "Real Estate Records") of the Superior Court of Fulton County, Georgia on May 6, 2014, transferring title to the Property jointly to herself and Ms. Sinue.[2] [*Id.* at ¶ 16.] A true and correct copy of the QC Deed is attached to the Complaint and incorporated by reference. [*Id.* at ¶ 17.]

On March 31, 2015 (the "Petition Date"), Debtors filed under penalty of perjury a voluntary petition constituting an order for relief pursuant to 11 U.S.C. § 301, thereby initiating the Main Case as a Chapter 7 proceeding. [Doc. 1, ¶ 8]. On the Petition Date, Debtors filed their Schedules "A" through "J", Statement of Financial Affairs, and Other Bankruptcy Documents under penalty of perjury (the "Sworn Schedules"). [*Id.* at ¶ 9]. Pursuant to the Sworn Schedules, Ms. William scheduled her undivided one-half ownership interest in the Property encumbered by one "mortgage" with a loan payoff in the amount of $144,804. [*Id.* at ¶ 12]. Upon information and belief, the scheduled mortgage is the Initial Security Deed. [*Id.* at ¶ 15]. On the Petition Date, Plaintiff was appointed to the Main Case as the interim Chapter 7 trustee pursuant to 11 U.S.C. § 701. [*Id.* at ¶ 10].

On or about September 30, 2016, after the Petition Date, Ms. William signed a Security Deed (the "First Security Deed") granting an interest in the Property to Defendant U.S. Bank (the "First Transfer"). [Doc. 1 ¶ 19]. Ms. Sinue also signed the First Security Deed. [*Id.* at ¶ 20]. The First Security Deed was filed and recorded in the Real Estate Records on January 26, 2017. [*Id.* at ¶ 21]. The First Security Deed purports to secure the repayment of a debt in the

---

[2] Ms. Sinue is Ms. William's daughter. [Brief at 2].

6

original principal amount of $144,400. [*Id.* at ¶ 22]. On or about September 30, 2016, after the Petition Date, Ms. William signed a second Security Deed (the "Second Security Deed") granting an interest in the Property to Defendant U.S. Bank (the "Second Transfer"). [*Id.* at ¶ 23]. Ms. Sinue also signed the Second Security Deed. [*Id.* at ¶ 24]. The Second Security Deed was filed and recorded in the Real Estate Records on January 26, 2017. [*Id.* at ¶ 25]. The Second Security Deed purports to secure the repayment of a debt in the original principal amount of $50,000. [*Id.* at ¶ 26]. At the time of the First and the Second Transfer, the Property was property of the Estate. The Property remains property of the Estate. [*Id.* at ¶ 27]. Plaintiff obtained a default judgment against U.S. Bank in A.P. 17-5243 that avoided the First and Second Transfers pursuant to 11 U.S.C. § 549 and preserved the transfers for the benefit of the estate. [*Id.* at ¶ 29-35].

Ms. Sinue and Ms. William jointly own the Property, all improvements thereon, and fixtures attached thereto. [Doc. 1, ¶ 40]. Partition in kind of the Property is not practicable. [*Id.* at ¶ 41]. The Bankruptcy Estate would derive very little benefit attempting to sell an undivided one-half interest in the Property to anyone other than Ms. William or Ms. Sinue. [*Id.* at ¶ 42]. Most, if not all, of the Property's benefit to the Bankruptcy Estate would be eliminated if Plaintiff were unable to sell Ms. Sinue's interest in the Property. [*Id.* at ¶ 43]. By selling the Property itself, there is a significant benefit, i.e., increased value, that far outweighs any detriment to Ms. Sinue, because she would receive one-half of any net sale proceeds. [*Id.* at ¶ 44]. The Property is not used in the production, transmission, or distribution for sale of electric energy or of natural synthetic gas for heat, light, or power. [*Id.* at ¶ 46.]

The Court takes judicial notice as follows: on May 14, 2015, Plaintiff filed a complaint against Defendants, initiating A.P. 15-05235 (the "First A.P."), seeking to (i) avoid the transfer embodied in the QC Deed (the "Transfer")—transferring the Property from Ms. Williams

7

solely to Ms. Williams and Ms. Sinue jointly—as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(A); (ii) avoid the Transfer under 11 U.S.C. § 548(a)(1)(B); (iii) alternatively, avoid an alleged equitable interest pursuant to 11 U.S.C. § 544(a)(3); (iv) recover the avoided Transfer under 11 U.S.C. § 550; (v) preserve the avoided Transfer under 11 U.S.C. § 551; and (vi) request turnover of the Property pursuant to 11 U.S.C. § 542(a). [A.P. 15-05235, Doc. 6].

In the First A.P. Plaintiff alleged as follows: 1. Ms. Sinue is Ms. William's daughter [A.P. 15-05235, Doc. 6 ¶ 6]; 2. the bankruptcy case was filed on March 31, 2015 and Ms. William scheduled a one-half interest in the Property subject to a mortgage of $144,804 [*Id.* at ¶¶ 7, 11]; 3. Ms. William alone purchased the Property for $185,000 [*Id.* at ¶ 12]; 4. Ms. William executed a QC Deed to herself and Ms. Sinue for the Property, for no consideration and failed to disclose the transfer in her Statement of Financial Affairs [*Id.* at ¶¶ 13-16]; 5. Ms. William denied the transfer at the 341 meeting until she was shown the QC Deed [*Id.* at ¶ 17]; 6. Ms. Sinue lives in the Property [*Id.* at ¶ 18]; and, 7. the transfer was made within one year of the filing of Ms. William's bankruptcy case. [*Id.* at 20]. The First A.P. was ultimately dismissed on June 24, 2016 for want of prosecution under B.L.R. 7041-1(a)(3)[3]. [*Id.*, Doc. 10].

On May 15, 2015, Trustee received funds from Debtors' bank in the amount of $10,518.07. After paying Debtors their exemptions and paying monthly bank service fees Trustee retained funds in the Estate in the approximate amount of $4,312.99 as of September 25, 2018.[4] [Main Case, Doc. 79 at 3-6]. On May 26, 2015, Trustee filed a notice indicating there would be

---

[3] The Order and Notice contains a typographical error [A.P. 15-5235, Doc. 10]. The order states in part: "Rule 7041-1(a)(3) of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia authorizes *sua sponte* dismissal of an adversary proceeding. . . ." and notes that no pleading has been filed for in excess of six months. [Doc. 10]. The order then states that the First A.P. "is hereby DISMISSED pursuant to BLR 7004-1(a)(3)." It is apparent that the reference should have been to BLR 7041-1 as 7004-1 does not address lack of prosecution nor does it contain a section (a)(3). The parties agree in their briefs that the First Complaint was dismissed for lack of prosecution. [A.P. 19-5265, Brief at 5; Response Brief at 4].

[4] As of December 31, 2020, bank fees had further reduced that amount to $4,233.94. [Main Case, Doc. 95 at 8].

assets available for distribution to creditors. [*Id.*, Doc. 27]. On May 27, 2015, the Court entered an order establishing a bar date for creditors to file proofs of claims by August 25, 2015. [*Id.*, Doc. 30]. Although Debtors had scheduled approximately $190,881.00 in unsecured nonpriority claims, only two claims were filed in the Main Case, totaling $3,687.10. [*Id.*, Doc. 23 at 7; Proof of Claim 1-1 and 2-1].

On March 30, 2017, Plaintiff filed a second complaint against Defendants, initiating A.P. 17-05088 (the "Second A.P."), seeking to (i) avoid the Transfer embodied in the QC Deed as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(A) and (ii) avoid the Transfer under 11 U.S.C. § 548(a)(1)(B); (iii) alternatively, avoid any alleged equitable interest under 11 U.S.C. § 544(a)(3); (iv) recover the avoided Transfer under 11 U.S.C. § 550; (v) preserve the avoided Transfer pursuant to 11 U.S.C. § 551; (vi) alternatively avoid the Transfer as an insider preference under 11 U.S.C. § 547; (vii) recover the avoided Transfer pursuant to 11 U.S.C. § 550; (viii) preserve the avoided Transfer pursuant to 11 U.S.C. § 551; and (ix) request turnover pursuant to 11 U.S.C. § 542(a). [A.P. 17-05088, Doc. 1]. The Second A.P. was voluntarily dismissed by Plaintiff on April 26, 2017. [*Id.*, Doc. 4].

In this proceeding, as an alternative to the turnover claim asserted against U.S. Bank in the Complaint (and subsequently dismissed), in Count II, Plaintiff seeks an order and judgment authorizing the sale of Ms. Sinue's interest in the Property and reimbursement for all costs incurred in this action, including interest and attorneys' fees under 11 U.S.C. § 363(h), and in the alternative, in Count III of the Complaint, Plaintiff seeks immediate turnover of the Property, pursuant to 11 U.S.C. §542(a), by Ms. Sinue and Ms. William or, alternatively, an order and judgment of turnover effective immediately, so Plaintiff may proceed with the marketing, showing, and selling of the Property.

9

**IV. ANALYSIS**

At issue in the Motion is whether Plaintiff fails to state a claim for relief because the causes of action in the Complaint are barred by the doctrine of res judicata or are not plausible on their face. Defendants argue that Plaintiff's request for turnover was brought in the First A.P. and dismissed pursuant to BLR 7041-1(b), which operates as an adjudication on the merits. Further, Defendants argue that Plaintiff's claims pursuant to 11 U.S.C. § 363 arise from the same nucleus of facts such that even though not brought in either of the First A.P. or Second A.P., claim preclusion bars Plaintiff's § 363(h) claim. Even if res judicata does not apply, Defendants argue that because Plaintiff holds or did hold sufficient funds to pay all unsecured creditors in full, there is no benefit to the estate in selling the Property such that Plaintiff does not have the power to do so, and relief under 11 U.S.C. § 363(h) is futile.

In response, Plaintiff argues that he has plead a claim under 11 U.S.C. § 363(h) and that the amount of claims filed is irrelevant to the determination that a sale would not detrimentally harm Ms. Sinue such that the sale should be allowed. Further, Plaintiff argues that he pled his claim for turnover as a contingent claim such that it is not barred by virtue of dismissal of the First A.P.

**1. Authority to Sell Co-Owned Property Under 11 U.S.C. § 363(h)**

Defendants argue that Plaintiff's claim to sell the Property pursuant to 11 U.S.C. § 363(h) should be dismissed because it is barred by the doctrine of res judicata, that is, claim preclusion. It is undisputed that elements 2 and 3 of res judicata are present: this is a court of competent jurisdiction and the parties in both the First A.P., Second A.P., and this proceeding are the same.

The Court will initially consider the fourth requirement for application of res judicata—whether the causes of action are the same. The instant Complaint is the first time

10

Plaintiff has sought relief pursuant to 11 U.S.C. § 363, but Plaintiff concedes that he could have brought a § 363(h) claim in the First A.P. [Response Brief at 7].  However, Plaintiff argues that the § 363(h) claim that could have been brought in the First A.P. would have required a different set of facts than that which existed when the First A.P. was filed, that is, a set of facts in which the estate's one-half interest in the Property had value sufficient to pay the mortgage and still provide a benefit to the estate. Plaintiff argues that the facts at present are different because, while the Property is still co-owned and the estate will only benefit from Ms. William's one-half interest in the Property, the value is now sufficient because U.S. Bank's postpetition liens were avoided in 2017.

On the other hand, Defendants argue that "[t]here exists no real question as to whether the claim under section 363 now raised by the Trustee arises out of the same nucleus of operative facts: the Trustee seeks turnover and, ultimately, sale of the same Property based on the same facts that were present in [the First A.P.]." [Brief at 11]. Based on the alleged identical factual nucleus, Defendants argue that a claim under § 363(h) could have and should have been brought in the First A.P. such that res judicata bars Plaintiff from asserting it now.

The facts upon which Plaintiff relied in the First A.P. occurred in 2009 when Ms. William purchased the Property for $185,000 and encumbered it with the Initial Security Deed, in 2014 when she transferred an interest in the Property to Ms. Sinue for no consideration, and in 2015 when Ms. William filed for bankruptcy and disclosed the Property subject to a mortgage in the amount of $144,804 in the Sworn Schedules. [Doc. 6 ¶¶ 11, 12-15].  Based upon these facts, in 2015, Plaintiff filed the First A.P., in which he sought to avoid Ms. Sinue's interest in the Property as a fraudulent transfer and then obtain turnover of the entire Property (after avoidance), as property of the Bankruptcy Estate.

11

The First A.P. was dismissed in June 2016, and in September 2016, Defendants engaged in the postpetition transfers with U.S. Bank. Plaintiff then filed and voluntarily dismissed the Second A.P., which asserted substantially similar claims as the First A.P., and then filed the third adversary proceeding to avoid and recover the postpetition liens granted to U.S. Bank. Plaintiff was successful in avoiding and recovering the postpetition liens. At that point, it appears that the Estate's interest in the Property was no longer encumbered because the postpetition liens secured a loan in an amount within $400 of that which was scheduled as owed on the Note and secured by the Initial Security Deed.  Additionally, the security deed in favor of U.S. Bank did not provide for a superior lien or state that it is a second lien.[5] [A.P. 17-5243, Doc. 1, Ex. F]. As a result, the facts relevant to the § 363(h) claim changed and, as Plaintiff argues, until the postpetition liens were avoided there was insufficient value to allege a benefit to the estate as is necessary to plead a § 363(h) claim. Thus, the material facts alleged in this proceeding with respect to the postpetition liens and the avoidance of them alter the nucleus of operative fact such that Plaintiff's § 363(h) claim is not barred by res judicata.

Defendants also argue that Plaintiff's claim under § 363(h) should be dismissed because Plaintiff will be unable to prevail on the claim because of an inability to demonstrate a benefit to the estate as required by 11 U.S.C. § 363(h)(3). Sections 363(b) and (h) state in relevant part:

> (b)  The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, . . .
>
> (h)  Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement

---

[5] It appears the postpetition transactions with U.S. Bank satisfied the Initial Security Deed on the Property that had been disclosed in Debtors' Sworn Schedules. Because the Initial Security Deed was satisfied, the avoidance of the U.S. Bank transfers left the Estate's interest in the Property unencumbered.

12

>of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
>>(1)  partition in kind of such property among the estate and such co-owners is impracticable;
>>
>>(2)  sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>>
>>(3)  the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>>
>>(4)  such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(b), (h).

Plaintiff has alleged each of the elements required to state a claim under § 363(h) because he has alleged that partition in kind of the Property is not practicable [Doc. 1 at ¶ 41], that the Bankruptcy Estate would derive very little benefit attempting to sell an undivided one-half interest in the Property to anyone other than Ms. William or Ms. Sinue [*Id.* at ¶ 42], that by selling the Property itself, there is a significant benefit, i.e., increased value that far outweighs any detriment to Ms. Sinue, because she would receive one-half of any net sale proceeds [*Id.* at ¶ 44], and that the Property is not used in the production, transmission, or distribution for sale of electric energy or of natural synthetic gas for heat, light, or power. [*Id.* at ¶ 46.] Plaintiff also alleges that the Property was purchased for $185,000, and at the time the Main Case was filed it was subject to a mortgage in the amount of $144,804 and that the postpetition liens of U.S. Bank have been avoided. [*Id.* ¶¶ 12, 13, 15, 35].

These allegations are sufficient for the purposes of pleading that a sale of the entire Property is necessary for the estate to benefit from its one-half interest and is not subject to dismissal on a Motion to Dismiss. Whether Plaintiff can prove a benefit to the estate that outweighs

13

any detriment to Ms. Sinue is a factual determination that is beyond the scope of a motion to dismiss. Likewise, with respect to Defendants' futility argument, an analysis of administrative and unsecured claims against the estate is beyond the scope of the Motion. As a result, the Court concludes that Plaintiff has stated a plausible § 363(h) claim and Count II is not subject to dismissal.

### 2. Request For Turnover under 11 U.S.C. § 542.

Turning now to Count III of the Complaint and Defendants' argument that Plaintiff's request for turnover under 11 U.S.C. § 542 is barred by res judicata, the Parties do not contest that as to § 542, elements 2 and 3 for application of res judicata are met: this Court is a court of competent jurisdiction and the parties are identical. With respect to adjudication on the merits, Plaintiff argues that the adjudication on the merits prescribed by Federal Rule of Civil Procedure 41(b) ("Rule 41(b)") did not reach the turnover claim because the claim was contingent on avoidance of the QC Deed transfer such that the dismissal under Rule 41(b) did not reach the turnover claim. As a result, Plaintiff argues that the Rule 41(b) dismissal does not bar the turnover claim in this proceeding.

In contrast, Defendants rely on *Tuitama v. Bank of America, N.A.,* 552 F. App'x 881, 883 (11th Cir. 2014), to argue that the Rule 41(b) dismissal is an adjudication on the merits of a claim brought under § 542 and because paragraphs 36 through 38 of the First A.P. and 48 through 50 of this proceeding are "virtually identical" the elements of res judicata are satisfied with respect to the turnover claim. [Brief at 13].

The First and Second A.P.s include a claim against Defendants for turnover under § 542. The First A.P. was dismissed pursuant to BLR 7041-1(a)(3), which provides that the bankruptcy court can dismiss an adversary proceeding "for want of prosecution" if it "has been

14

pending in the Bankruptcy Court for more than six months without any substantial proceeding of record having been taken[.]" BLR 7041-1(a)(3). BLR 7041-1(b) provides that in accordance with Rule 41(b), "a dismissal for want of prosecution operates as an adjudication upon the merits of the action" unless the dismissal order specifies otherwise. BLR 7041-1(b). The Second A.P. was dismissed voluntarily. A voluntary dismissal under Rule 41(a) is not subject to Rule 41(b) or BLR 7041-1(b). *See* Fed. R. Civ. P. 41(a); BLR 7041-1(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S. Ct. 1021, 1026 (2001) (stating the difference between subsection (a) and (b) of Rule 41 is whether the dismissal is with or without prejudice).

The language of Rule 41(b)—which is mirrored in BLR 7041-1(b)—providing that a dismissal for want of prosecution is an adjudication on the merits does not always satisfy the final judgment on the merits requirement of res judicata. *Tuitama v. Bank of America, N.A.,* 552 F. App'x 881, 883 (11th Cir. 2014) (citing *Semtek,* 531 U.S. at 508-09; 121 S. Ct. at 1028-29). Rather, the effect of the "adjudication on the merits" contained in Rule 41(b), is that, unlike a dismissal without prejudice, a dismissal that is with prejudice bars refiling of the same claim in the same court in which the claim was originally filed. *Semtek,* 531 U.S. at 506, 121 S. Ct. at 1027.

Here, Plaintiff argues that the turnover claim in the First A.P. was contingent on the success of his avoidance claim and because the avoidance claims were dismissed the turnover claim never arose because the necessary contingency did not occur and thus the turnover claim was not adjudicated by the dismissal order. This argument is seemingly inconsistent with the Eleventh Circuit's statement in *Tuitama*, that federal law "clearly dictates that dismissal for failure to prosecute … is a judgment on the merits with claim-preclusive effect." *Tuitama*, 552 F. App'x at 883. It is further inconsistent with the Eleventh Circuit's reluctance to create exceptions to res judicata. *See Griswold v. County of Hillsborough, Fla.*, 598 F.3d 1289, 1294 (11th Cir. 2010)

15

(declining to fashion a "manifest injustice" exception to res judicata); *Baptiste v. Comm'r*, 29 F.3d 1533, 1540 (11th Cir. 1994) (declining to find a "public policy or fundamental fairness" exception to application of res judicata), *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir. 1984) (rejecting "interests of justice" exception), and *Ragsdale,* 193 F.3d at 1240 (warning against strategic claim splitting). Consequently, the Court would be inclined to find that the turnover claim raised in the First A.P. cannot be refiled. The Court does not have to determine this question, however, because an analysis of the nucleus of operative facts necessary to the turnover claim in the First A.P. and that raised here establish that the turnover claims are not the same cause of action and, thus, even if the dismissal under Rule 41(b) constitutes an adjudication on the merits, the fourth element necessary to bar the turnover claim in this proceeding has not been met.

Defendants refer to paragraphs 36-38 of the initial complaint in the First A.P. and paragraphs 48-50 to argue that the claims are the same because the allegations in the paragraphs are "virtually identical." [Brief at 13]. In the First A.P., Plaintiff pled as follows:

> COUNT VI: Request for Turnover Pursuant to 542(a)
>
> 40. Plaintiff re-alleges paragraph1 1 through 39 above as if set verbatim herein.
>
> 41. Once the Transfer and/or any Alleged Equitable Interest are avoided and recovered by the Estate, the Estate will have the entire fee interest in the Property.
>
> 42. Pursuant to 11 U.S.C. § 542(a), Plaintiff seeks immediate turnover of the Property, or alternatively, an order and judgment of turnover effective upon Court approval of any sale of the Property.

[First A.P., Doc. 6 ¶ ¶ 40-41; Doc. 1 ¶ ¶ 36-38.]. While in the Complaint he alleges:

> COUNT III Alternative Count: Request For Turnover Of The Property Under Section 542 of the Bankruptcy Code
>
> 48. Plaintiff hereby re-alleges and incorporates paragraphs 1-47 of his Complaint as if the same were set forth in this paragraph verbatim.

16

>49. Plaintiff's interest in the Property became property of the Bankruptcy estate as of the Petition Date.
>
>50. Plaintiff seeks immediate turnover of the Property by Defendant Sinue and Ms. William or, alternatively, an order and judgment of turnover effective immediately, so Plaintiff may proceed with the marketing, showing, and selling of the Property.

[Doc. 1, ¶ ¶ 48-50].

Initially, the Court notes that Defendants' focus on these few paragraphs setting forth the turnover counts in the First A.P. and this proceeding is too limited and does not address the more specific factual analysis required under *Manning*, *Ragsdale,* and other precedent discussed herein. *See Supra* at 3-5. Defendants' argument also fails to acknowledge the incorporation of all the facts alleged in the complaints which do allow for the more fulsome analysis required.

As discussed with respect to Count II, the facts upon which Plaintiff relied in the First A.P. occurred in 2009, 2014, and 2015 when Ms. William purchased the Property for $185,000 and disclosed the Property subject to a mortgage in the amount of $144,804 in the Sworn Schedules. [Doc. 6 ¶ ¶ 11, 12]. Additional material facts occurred in 2014, within one year of the bankruptcy filing, when Ms. William executed the QC Deed, for no consideration and Ms. Sinue became the co-owner of the Property. [Doc. 6 ¶ ¶ 13-15]. Based upon these facts, in 2015, Plaintiff filed the First A.P., in which he sought to avoid Ms. Sinue's interest in the Property as a fraudulent transfer and then for turnover of the entire Property (after avoidance), as property of the Bankruptcy Estate.

In this proceeding, the facts upon which Plaintiff relies includes the facts in existence at the time of the First A.P. in addition to facts that arose after dismissal of the First A.P. due to the conduct of Defendants—that being the postpetition transfers to U.S. Bank and Plaintiff's subsequent avoidance of the postpetition transfers. [Doc. 1 ¶ ¶ 16, 19-21, 23-26, 33]. In addition,

17

to these salient facts, Plaintiff alleges that the Property is co-owned by Defendants and that the value of the Property is significantly enhanced by selling the entire Property with only the Bankruptcy Estate's one-half interest inuring to the benefit of the Estate [Doc. 6 ¶ ¶ 40, 42, 44]. Thus, in the First A.P., the turnover action sought to recover Ms. Sinue's interest in the Property for the benefit of the Estate while in this proceeding, the turnover action only seeks to maximize the Estate's one-half interest in the Property. Because the postpetition transfers and avoidance of those transfers occurred after the filing of the First A.P. and are necessary to Plaintiff's allegations under § 363(h) and thus, under § 542, the Court concludes that the claim for turnover of the Estate's interest and the co-owner's interest in this proceeding is not the same cause of action raised in the First A.P. and Plaintiff is not barred from pursuing this claim.

Section 542 empowers the court to compel an entity to deliver to the bankruptcy trustee any "property that the trustee may use, sell or lease under Section 363 of this title ...." 11 U.S.C. § 542(a). Section 363(b) authorizes the trustee to sell the estate's interest in property and § 363(h) authorizes a trustee to sell a co-owner's interest if certain criteria are satisfied. Thus, to state a claim for turnover Plaintiff must allege that the Property is property of the bankruptcy estate or is the property of a co-owner and that facts satisfying the criteria of § 363(h) are present. Here, Plaintiff alleges that Ms. William's one-half interest in the Property is property of the estate and that pursuant to the §363(h) he is also entitled to sell the entire Property. [Doc. 1 ¶¶ 27, 40-46, 49]. This is sufficient to state a claim for turnover under §542. As a result, Count III of the Complaint is not subject to dismissal.

Therefore, for the reasons stated herein, it is now hereby,

ORDERED that the Motion to Dismiss is DENIED.

**END OF ORDER**

**Distribution List**

Michael J. Bargar
Arnall Golden Gregory, LLP
Suite 2100
171 17th Street, N.W.
Atlanta, GA 30363

Neil C. Gordon
Arnall Golden Gregory LLP
171 17th Street, NW
Suite 2100
Atlanta, GA 30363

William D. Matthews
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

Alex J. Dolhancyk
The Dolhancyk Law Firm, PC
PO Box 2067
Peachtree City, GA 30269-2067

Maybelline Sinue
5501 The Vyne Avenue
Atlanta, GA 30349-8752